

FILED
FEB 2 3 2018
Clerk, U.S. District Court
Texas Eastern

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| DAVID E. MACK<br>*Plaintiff.*<br><br>vs<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC.; TRANS UNION<br>LLC; EQUIFAX, INC.<br>*Defendants* | Case No. 4:18-cv-00006 ALM-CAN |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT TRANS UNION'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff, David E. Mack asks the Court to deny Defendant's Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) and states as follows:

### INTRODUCTION

Trans Union gets off on the wrong foot from the very beginning in its Motion to Dismiss stating inaccurate facts regarding Plaintiff's litigation history. In what is a *typical* ad hominem attack by a Defendant on a *pro se* litigant, it states Plaintiff has filed over 100 cases in the Eastern District of Texas, which is absolutely false. This behavior by Trans Union is reprehensible, uncalled for and will not go unchallenged.

While Plaintiff as a *pro se* litigant has filed a number of actions in this court over the past several years in defense of his rights he has not filed anywhere near 100 cases in this district. If Trans Union had only looked a little closer at the *facts* it would have seen that a substantial number of the cases in which Mr. Mack has been involved in the Eastern District were related to TCPA claims and were removed to the District Court by defendant Midland Credit Management, Inc. from the Collin County Justice Court where they were filed. That said, Plaintiff is very protective of his rights granted under federal law, and strenuously seeks to protect those rights when they are violated. Every suit Plaintiff has filed is well founded in law, and none of them have been filed frivolously. The only possible reason for which Defendant makes this ad hominem, irrelevant citation to the number of cases filed is to attempt to taint the mind of this Court and redirect its attention away from the matter at hand, which is, the violation of Plaintiff's rights that occurred when Defendant failed to disclose the Plaintiffs complete consumer file when he made the request pursuant to 15 U.S.C. § 1681g.

Had it carefully reviewed the available record, for example, Trans Union would have found that the Honorable District Judge Amos Mazzant of the Eastern District of Texas denied Midland Credit Management's Motion to Dismiss in case No. 4:14-cv-578 [Doc. 18-1] where the Defendant moved for dismissal arguing claim splitting and res judicata. In denying its motion to dismiss, the court even admonished the Defendant—not the Plaintiff— stating "In any event, it seems to the Court that, if Defendant stopped calling Plaintiff, Plaintiff would stop filing suits against it." Midland then settled with Plaintiff. It would appear that Mr. Mack knows not only how to state a claim but also how to defend motions to dismiss based on spurious and unfounded defenses.

In another case involving Mr. Mack, Judge Mazzant denied a Motion by Progressive Financial Services in case No. 4:13-cv-544 [Doc. 28] where it was asking the court to require Mr. Mack to post bond and attempting to portray Mr. Mack as a vexatious litigator with the court stating "The fact, by itself, that Plaintiff files a large number of cases does not make him vexatious. Plaintiff has a right to sue for violation of his rights, and this Court has never found that Plaintiff abused the process in his prior litigation." **Trans Union should stick to the facts of THIS case instead of engaging in ad hominem attacks on a *pro se* litigant who is doing nothing more than vigorously defending his consumer rights**.

## FACTUAL BACKGROUND

Plaintiff made two very detailed and specific requests for his <u>full consumer file disclosure</u> under 15 U.S.C. § 1681g in an effort to obtain and review ALL information that Trans Union had in its files relating to him as a consumer. [Doc. 1-2,1-3] The FCRA requires, among other obligations, that CRAs "clearly and accurately disclose" to a requesting consumer "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). Mr. Mack did not ask for a credit report, a credit score, risk score, predictors or things relating to the processes and procedures of how Trans Union creates reports, maintains, analyzes or disseminates information relating to him to its customers. He simply requested a <u>full consumer file disclosure</u> of what Trans Union was in possession of in any form or in any place that relates specifically to him as a consumer. [Doc. 1-2,1-3] It was a very unambiguous and straightforward request made under the law. In response to Plaintiff's multiple requests Trans Union provided nothing more than an 8 page credit report twice with the first page greeting "Enclosed is the TransUnion **Personal Credit Report that you requested**." Plaintiff did not request a credit

report but instead made a request for his <u>full consumer file disclosure</u> of all information contained in his Trans Union files and that is not what he received after multiple requests.

## STANDARD OF REVIEW

When considering Defendant's motion, the court must construe the factual allegations in the complaint in the light most favorable to the Plaintiff. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996); *Jones v. General Elec. Co.*, 87 F.3d 209, 211 (7th Cir. 1996). Only if no possible construction of the alleged facts will entitle Plaintiff to relief should the court grant Defendant's motion. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984). If the factual allegations in Plaintiff's complaint support any legal theory that entitles Plaintiff to some relief, the court should overrule Defendant's motion.

## ARGUMENT AND AUTHORITIES

1. **Plaintiff's Complaint Fails to State Facts Sufficient to Support a Claim for Relief Pursuant to § 1681g**

Plaintiff made two very specific requests for his full consumer file disclosure pursuant to 15 U.S.C. § 1681g to be sure that there would be no misunderstanding as to exactly what it was he was requesting anticipating that Trans Union may respond by sending just his conventional credit report in response to his request. [Doc. 1-2] When he received the first response which was exactly as anticipated (a conventional credit report) he made a second and final very detailed request to be sure that Trans Union knew without any doubt what he was requesting and entitled to under the statute. [Doc. 1-3] Once again, Trans Union responded with nothing more than a conventional credit report which was not responsive to his request for his full consumer file disclosure. Mr. Mack made no request for any credit score, or other risk

scores or predictors and made no request for any information relating to any processes or procedures of Trans Union. Mr. Mack's complaint pleads in detail precisely what he was asking for, what Trans Union failed to do to comply with his request and his complaint is supported by exhibits.

## 2. "Consumer file" is defined as the information contained in a consumer's disclosure/credit report

In its arguments for dismissal Trans Union immediately begins by conflating the words disclosure and credit report (disclosure/credit report) by arguing they are synonymous. Nowhere in the FCRA is the term "disclosure/credit report" used. A credit report is a disclosure of course… of credit information. That does not mean it is necessarily a disclosure of **all** information held in a consumer's file at a certain time. The plain language of the FCRA requires, among other obligations, that CRAs "clearly and accurately disclose" to a requesting consumer "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). FCRA defines "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *Id.* § 1681a(g). The United States Court of Appeals for the Seventh Circuit has found that "[t]he term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency *that might be furnished, or has been furnished, in a consumer report on that consumer.*" *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir.2007) (emphasis in original) (citing 16 C.F.R. pt. 600, app. § 603). The Seventh Circuit has held that, although a consumer's "entire file" need not be disclosed upon request, "complete copies of their consumer reports" must be disclosed upon request. *Id.* The United States Court of Appeals for the Third Circuit has ruled that a CRA may not evade disclosure requirements by, for example,

"contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file and is included in a credit report," *Cortez v. Trans Union, LLC,* 617 F.3d 688, 711 (3d Cir.2010), or by using "[c]orporate organization, reorganization, structure, or restructuring." to circumvent reporting requirements. 12 C.F.R. § 1022.140(a). *Jones v. Equifax* No. 3:15-cv-112-RJC-DSC United States District Court, W.D. North Carolina, Charlotte Division April 11, 2016. Defendant's argument has no merit when looking at the plain language of the statute and case law.

### 3. Plaintiff admits he received two copies of his credit report

Plaintiff readily admits he received two copies of his <u>credit report</u> which is **<u>one</u> type of disclosure**. Mr. Mack very specifically asked for something other than a credit report. He requested a full consumer file disclosure which would include "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). FCRA defines "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *Id.* § 1681a(g) The fact that Trans Union sent Mr. Mack a credit report does not equate to it providing his requested full consumer file disclosure UNLESS it has no other information in any of its files that relates to Mr. Mack whether it **has** been or **might** be furnished in a consumer report of **any** kind. If that is the case why doesn't Trans Union just categorically state it has no other information in its files relating to Mr. Mack in its motion to dismiss to bring this case to an end right now? Is it reasonable to believe Trans Union collects and maintains consumer information on hundreds of millions of consumers but Mr. Mack is somehow an exception and they have no other information whatsoever about him when he is a consumer, a renter and has been a property owner? Is that plausible? Again, the

court needs to stay on point that this case isn't about whether any information related to Mr. Mack that Trans Union has or may have provided to a third party is accurate or not. The issue here is whether there was information in Trans Union's files at the time of Mr. Mack's request that was required to have been provided to him pursuant to his lawful request and wasn't. THAT is the sole claim in this lawsuit and the only issue before this court. Defendant's argument that Mr. Mack received the full consumer file disclosure that he specifically requested has no merit and should be rejected by the court.

### 4. Plaintiff provides no actual basis for his assertion that the "Trans Union Credit Report: was not his "full consumer file disclosure"

While in the past Mr. Mack has used the website annualcreditreport.com to request a copy of his **credit report** in this case he did something different. With the advent of the hack of the Equifax database and the ensuing media attention and firestorm it has created, Mr. Mack became even more aware that there appeared to be additional information about a consumer in a consumer reporting agency's files than what was provided in a credit report that he obtained from annualcreditreport.com. This caused him to dig even deeper than he already had been to conduct research about the consumer reporting agencies and what kind of disputes there may have been in the courts as to the information they possess on consumers and the accuracy of it. He also intensified his already ongoing search for information in the public domain that might indicate there was more information that the CRA's held on consumers than was being disclosed in the credit reports provided by them either through annualcreditreport.com or directly upon request to the individual CRA's. Of course, if a consumer only requests their credit report and that is forwarded to them in response to the request than it has been satisfied.

After substantial reading and research it became apparent there was a considerable amount of information that was being provided about consumers to a plethora of entities and persons that was not necessarily directly related to specific credit accounts such as a mortgage, credit card or car loans yet which could potentially affect the consumer's creditworthiness or ability to do business, obtain employment, obtain housing or could affect numerous other aspects of a consumer's life. In one extreme case there was derogatory information in a consumer's file that stated in part:

> The file shows that you are very much disliked by your neighbors at that location [Millstone's Washington residence], and were considered to be a 'hippy type'. The file indicates that you participated in many demonstrations in Washington, D. C., and that you also housed out-of-town demonstrators during demonstrations. The file indicates that these demonstrators slept on floors, in the basement and wherever else there was room on your property. The file shows that you were strongly suspected of being a drug user by neighbors but they could not positively substantiate these suspicions. You are shown to have had shoulder length hair and a beard on one occasion while living in Washington, D. C. The file indicates that there were rumors in the neighborhood that you had been evicted by neighbors from three previous residences in Washington, D. C. prior to living at the 48th Street, N. W. location.

which caused his auto insurance to be cancelled as a result of the credit report provided by O'Hanlon Reports, Inc., a CRA.[1] The information was later found to be patently false and uncorroborated.

Needless to say Plaintiff was appalled that such false information was obtained and even possessed about a consumer by a CRA and could have that kind of dramatic effect on a consumer's life. Upon further research Plaintiff found numerous other court cases brought in a number of jurisdictions involving erroneous criminal information that was provided by CRA's to potential landlords in certain instances and erroneous employment information provided by CRA's to potential employers where the consumer was denied employment as a result just to

---

[1] *Millstone v O'Hanlon Reports, Inc.* 383 F.Supp. 269 (E. Dist. Missouri 1974)

name several. It became obvious there was more information being provided to certain customers of CRA's than just listings of mortgage, credit card, car loan and other similar credit accounts that a consumer receives in his "credit report" and in a number of cases that information was erroneous with negative consequences to the consumer.

For far too long it would appear that Trans Union and other major CRA's have diligently conditioned the courts, regulators and the public to think of a full file disclosure (which is precisely what a consumer is entitled to under the law *when a proper request is made*) as a credit report which contains only certain information but not by any means all information they retain about consumers so what is provided and potentially subject to dispute is minimal. There is a financial incentive for them to do so as brilliantly explained by Aaron Klein of the Brookings Institute in an article published by CNBC on September 27, 2017.[2]

> More than one in five consumers have a "potentially material error" in their credit file that makes them look riskier than they are. Lenders respond to this incorrect data by offering you higher interest rates, less favorable terms, or denying credit if the error makes you look too risky.
>
> With money on the line, you might assume that the credit reporting system would fix the problem. In reality, it is the opposite. Speed and volume are favored over accuracy. Large-scale inaccuracies are tolerated. The costs of correcting the data outweigh benefits — for the credit bureaus, though, not the consumers.
>
> Given the importance of credit scores, why are they so inaccurate? Three reasons: size, speed, and economic incentives of the system. Each of the major bureaus has over 200 million credit files that, on average, contain 13 past and current credit obligations, resulting in 2.6 billion pieces of data. Each month, more than 1 billion pieces of data are updated, requiring a speedy system. With so much data coming from so many sources, so quickly, errors are inevitable (especially if you have a common name).

The court should also take note that the annualcreditreport.com website (which was created and is maintained by the major CRA's) has NO place on it where a consumer can request

---

[2] https://www.cnbc.com/2017/09/27/the-real-problem-with-credit-reports-is-the-astounding-number-of-errors-equifax-commentary.html

<u>their full consumer file disclosure</u> but instead only provides the consumer with the option to request a credit report. How convenient………. Sometimes one just has to look at the obvious. If Congress only intended that a consumer get a credit report upon a request, would they not have simply stated so in the statute rather than being very specific in the language of § 1681g stating a full file disclosure? A common sense reading of the plain language of the statute reveals there was to be more than just a credit report provided to the consumer upon a request for their full file disclosure **IF** there was more information held in the CRA's files. Is it any wonder why so many consumers' lives are disrupted and sometimes ruined because of inaccurate and incredibly harmful consumer information disseminated by the CRA's because people don't know it even exists and if they had known would have had the opportunity to dispute and seek correction of it before massive damage occurred? The problem of inaccurate data isn't just limited to specific credit account information as Trans Union and the other CRA's would have us believe. It is hidden data that may often be inaccurate and it is **purposely not disclosed**, even when requested by a consumer like Mr. Mack for financial reasons that surely do NOT benefit the consumer.

      Some companies do provide far more information when a request for a full file disclosure is made of them. As an example, Mr. Mack made a request to LexisNexis (which is a company comparable to Equifax, Trans Union and Experian in size and a competitor) for his full consumer file disclosure. In response he received documents with the greeting "Thank you for contacting LexisNexis to obtain your **Full File Disclosure**" with a <u>**myriad of consumer reports attached**</u>. (Emphasis added) How refreshing; <u>they used the proper terminology when responding</u>! The disclosure from LexisNexis was 123 pages of information (**some of which was erroneous and dates back to 1991**) and didn't even contain credit account information that must be requested separately from LexisNexis. By comparison, what was received from Trans

Union <u>in response to Plaintiff's request for his full consumer file disclosure (the same request made of Trans Union)</u> was a mere 8 pages with the greeting "Enclosed is the TransUnion **Personal Credit Report that you requested.**" This created a <u>reasonable belief based on information known by *this* consumer</u> that a full consumer file disclosure had not been provided by Trans Union as requested multiple times and is required under the FCRA upon a consumer's request. (Emphasis added)

  Trans Union cites *Gillespie* in their arguments stating that federal courts and the FTC have limited the scope of the term "file" to all information on the consumer included in a consumer report that would be sent to a third party. The flaw in using that argument in this case is that it is taken out of context and misinterpreted as well as an incomplete statement. Trans Union later states more completely and <u>truthfully</u> about *Gillespie*: *Gillespie* cites the FTC's commentary on § 1681g(a)(1) regarding the limited scope of the term "file": "The term 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that **might** be furnished, or **has** been furnished, in a consumer report on that consumer." *Id.* at 909 (quoting 16 C.F.R. pt. 600, app. § 603). (Emphasis added)

  Trans Union would have this court believe that the only kind of consumer report that exists is a credit report so that is all the data they had to provide to Mr. Mack upon his request which is far from the truth. Plaintiff became aware of two videos available on Youtube where Trans Union utilizes audio/video presentations to promote its abilities to provide immediate information to its customers from its extensive criminal and eviction databases, and it cross-uses its credit and criminal record databases. *See* http://www.youtube.com/watch?v=yXZZI9jO27Q; and

http://www.youtube.com/watch?v=HR2oAl8N5XY&list=UU2KeLg4EXenj_9JcUAxKs_w&ind

ex=2&feature=plpp_video. It is obvious that these presentations do not just relate to information that a consumer receives in their conventional credit report. They go FAR beyond that to say the least. This is merely the tip of the iceberg on the myriad of consumer reports provided by the CRA's including Trans Union from information in their files.

There are numerous consumer reports that are generated by the CRA's from information they have in their files regarding such things as rental history, criminal background, public records, employment etc. so the argument that all Trans Union had to do is provide information to Mr. Mack that is specific to one particular consumer report (a credit report) is fatally flawed. *Gillespie* is not analogous to this case. Trans Union cites *Gillespie* as supporting its argument for dismissal. The issue in *Gillespie* was not whether Trans Union had provided a full file disclosure but rather that the Plaintiff brought the complaint because Trans Union failed to disclose ancillary items which the court found they are not required to do. Gillespie actually supports Mr. Mack's claim when read in the proper context as to what is a full consumer file disclosure.

Trans Union cites *Arista Records LLC v. Doe 3* 604 F.3d 100 (2d Cir. 2010) and *Mathews v. Bowie County*, 2013 U.S. Dist. LEXIS 130978 (E.D. Tex. Sept. 13, 2013) in support of its argument on Plaintiff's "information and belief" statement. As is quite often the case the argument here by the Defendant actually supports Plaintiff in that 1) the facts here are peculiarly within the possession and control of the defendant (and would have to be revealed in Discovery and 2) the information is based on factual information known by Plaintiff from other cases involving Trans Union specifically that provides an inference of facial plausibility to his claims. After viewing Trans Union's videos how could Plaintiff NOT believe that there had to be at least some information in their files that relates to him that **has** or **might** be furnished in a consumer

report of some kind that had not been disclosed? Trans Union's smokescreen defenses relating to Plaintiff's information and belief allegations are baseless.

## CONCLUSION

Trans Union knows full well as a major long term player in the consumer reporting agency arena what the requirements of the FCRA are. They also know whether they have any information in their files that relates to Mr. Mack that was not disclosed to him after his request. The fact Trans Union did not categorically state it has no additional information relating to Mr. Mack as a consumer in their files in their Motion to Dismiss would leave a reasonable person, including this court, to reasonably assume there might be more information and that this case should go forward to Discovery to answer that question factually.

**WHEREFORE**, because the Defendant has failed to bring forth any cognizable or legitimate arguments for dismissal before this Honorable Court, Plaintiff respectfully requests the Court DENY Defendant's Motion to dismiss and allow Plaintiff's claim to move forward to trial on the merits. In the event the Court finds that Plaintiff has failed to state a claim as alleged by Trans Union, Plaintiff requests leave of this court to file an Amended Complaint to cure any deficiencies identified by this Honorable Court.

Respectfully Submitted,

David E Mack
7720 McCallum Blvd. # 2099
Dallas, Texas 75252
972-735-9642
mack2001@swbell.net

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was served on the parties listed below by email on the date below.

**Counsel for Defendant Experian Information Solutions, Inc.**
Richard J. Johnson
JONES DAY
2727 N. Harwood St.
Suite 500
Dallas, Texas 75201
jjohnson@jonesday.com

**Counsel for Defendant Trans Union, LLC**
Kristin Marker
Strasburger & Price, LLP
2600 Dallas Parkway
Suite 600
Frisco, Texas 75034
kristin.marker@strasburger.com

**Counsel for Defendant Equifax, Inc.**
Kendall Carter
King and Spaulding, LLP
1180 Peachtree Street
Atlanta, GA 30309
kcarter@kslaw.com

Dated February 23, 2018

_/s/ David E. Mack_
David E. Mack